**2015-1275, -1325**

In The

# United States Court of Appeals
### For The Federal Circuit

## LUMEN VIEW TECHNOLOGY LLC,

*Plaintiff – Appellant*,

v.

## FINDTHEBEST.COM, INC,

*Defendant – Appellee.*

## APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK IN 1:13-cv-03599-DLC, SENIOR JUDGE DENISE COTE.

———————

## BRIEF OF APPELLEE

———————

Joseph S. Leventhal
Carolyn V. Juarez
THE LEVENTHAL LAW FIRM, APC
600 West Broadway, Suite 700
San Diego, California 92101
(619) 356-3518
jleventhal@leventhallaw.com
cjuarez@leventhallaw.com

*Counsel for Appellee*

## <u>CERTIFICATE OF INTEREST</u>

The undersigned counsel certifies the following:

1.      The full name of every party or amicus represented by me is:

Findthebest.com, Inc.

2.      The name of the real party in interest represented by me is:

N/A

3.      There are no parent corporations or publicly held corporations that own 10 percent or more of the stock of the party or amicus curiae represented by me.

4.      The names of all firms and the partners or associates that appeared for the party or amicus now represented be me in the trial court or agency or are expected to appear in this court are:

THE LEVENTHAL LAW FIRM, APC: Joseph S. Leventhal and Carolyn V. Juarez

/s/ Joseph S. Leventhal
Joseph S. Leventhal

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ..........................................................................i

TABLE OF CONTENTS ................................................................................. ii

TABLE OF AUTHORITIES ............................................................................v

STATEMENT OF RELATED CASES ............................................................ viii

JURISDICTIONAL STATEMENT ....................................................................1

STATEMENT OF THE ISSUES........................................................................2

STATEMENT OF THE CASE............................................................................3

STATEMENT OF FACTS ..................................................................................6

      A.    FTB and Its Consumer Research Website ...........................................6

      B.    Lumen's "Shell" Game Designed to "Monetize" the '073 Patent........6

      C.    The '073 Patent ...................................................................................7

      D.    Lumen Maintained Its Baseless Claims Without Explanation .............9

      E.    Lumen's Complaint and Immediate Settlement Offer.......................10

      F.    FTB Requested That Lumen Withdraw its Baseless Complaint ........12

      G.    Lumen Attempted to Extort a "Licensing Fee" By Threatening Criminal Prosecution.........................................................................13

      H.    Lumen Attempted to Silence FTB .....................................................14

      I.    Invalidation of the '073 Patent ..........................................................15

J.    The District Court's Determination that This Case Is Exceptional and Award of Reasonable Attorneys' Fees.....................16

SUMMARY OF THE ARGUMENT ....................................................................18

STANDARD OF REVIEW ...................................................................................20

ARGUMENT ..........................................................................................................21

I.    The District Court Did Not Abuse Its Discretion In Determining That This Case is Exceptional ...........................................................21

    A.    The District Court Evaluated Infringement Using Lumen's Own Proposed Claim Constructions and No *Markman* Hearing or Jury Trial Was Necessary to Determine that FTB Did Not Infringe ......................................22

    B.    Lumen Cannot Bolster the Substantive Strength of Its Pre-Filing Investigation and Infringement Claims By Advancing New Arguments.......................................................25

    C.    The Presumption of Patent Validity Does Not Excuse Lumen's Conduct..................................................................28

    D.    The District Court Properly Considered the Totality of the Circumstances in Determining That This Is An Exceptional Case...................................................................29

II.    The District Court Did Not Abuse its Discretion in Enhancing the Attorneys' Fee Award .................................................................31

    A.    Section 285 Permits An Award of Reasonable Attorneys' Fees, Which Properly Includes an Enhancement in This Case ......................................................................................31

    B.    The District Court's Decision to Enhance the Lodestar Amount By a Multiplier of Two is Supported by the Record ....................................................................................34

C.    The Enhanced Award Serves a Compensatory and Deterrent Effect, Not a Punitive Purpose...................................36

CONCLUSION ......................................................................................................38

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>CASES</u>

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  13 S. Ct. 2347 (2014)................................................................... viii

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*,
  682 F.3d 1003 (Fed. Cir. 2012) .....................................................33

*Biax Corp. v. Nvidia Corp.*,
  2015 WL 755940 (Fed. Cir. Feb. 24, 2015) ..................................23

*Bilski v. Kappos*,
  130 S. Ct. 3218 (2010)....................................................... 15-16, 28

*Brooks Furniture Mfg, Inc. v. Dutailier Int'l, Inc.*,
  393 F.3d 1378 (Fed. Cir. 2005) .....................................................33

*Central Soya Co. v. Geo. A. Hormel & Co.*,
  723 F.2d 1573 (Fed. Cir. 1983) .....................................................32

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,
  717 F.3d 1269 (Fed. Cir. 2013) ..............................................16, 28

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
  780 F.3d 1357 (Fed. Cir. 2015) .....................................................33

*Highmark, Inc. v. Allcare Health Mgm't Sys., Inc.*,
  134 S. Ct. 1744 (2014)............................................................20, 22

*In re Seagate*,
  497 F.3d 1360 (Fed. Cir. 2007) .....................................................33

*Junker v. Eddings*,
  396 F.3d 1359 (Fed. Cir. 2005) .....................................................32

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996)..........................................................................22, 23, 24

*Mathis v. Spears*,
    857 F.2d 749 (Fed. Cir. 1988) ........................................................32, 36, 37

*McCarthy v. Manson*,
    714 F.2d 234 (2d Cir. 1983) ........................................................................27

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014)............................................................................*passim*

*Perdue v. Kenny A. ex rel. Winn*,
    559 U.S. 542 (2010)..............................................................................32, 34

*Takeda Chem. Indus., Inc. v. Mylan Labs., Inc.*,
    549 F.3d 1381 (Fed. Cir. 2008) ..................................................................32

## **CONSTITUTIONAL PROVISION**

U.S. CONST. amend. I ............................................................................14

## **STATUTES**

28 U.S.C. § 1654 ....................................................................................27

28 U.S.C. § 2071 ....................................................................................27

35 U.S.C. § 101 ........................................................................ viii, 4, 15

35 U.S.C. § 282 ......................................................................................28

35 U.S.C. § 284 ...............................................................................33, 34

35 U.S.C. § 285 .............................................................................*passim*

## <u>RULES</u>

Fed. Cir. R. 28(a)(4) ............................................................................. viii

Fed. Cir. R. 47.5 .................................................................................. viii

Fed. R. Civ. P. 83 ..................................................................................27

S.D.N.Y. R. 6.3 .....................................................................................27

## STATEMENT OF RELATED CASES

Pursuant to Fed. Cir. R. 28(a)(4) and 47.5, Defendant/Appellee Findthebest.com, Inc. ("FTB") states that Plaintiff/Appellant Lumen View Technology LLC ("Lumen") previously appealed from the district court's order invalidating U.S. Patent No. 8,069,073 under 35 U.S.C. § 101 because it did not claim patent-eligible subject matter. *See* Appeal No. 14-1156. Lumen's appeal was stayed pending the Supreme Court's decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 13 S. Ct. 2347 (2014), after which Lumen voluntarily dismissed it. Prior to dismissal of the appeal, no briefing was submitted by either party and no decision was reached by this Court.

# **JURISDICTIONAL STATEMENT**

FTB concurs with the jurisdictional statement in Lumen's opening brief. In addition, the district court entered final judgment on December 8, 2014 for the defendant; ordered, adjudged, and decreed that the case was exceptional under 35 U.S.C. § 285; and awarded FTB $302,083.63 in attorneys' fees and costs plus interest from May 30, 2014 at a rate of 9% for the reasons set forth in the Opinion and Order dated May 30, 2014 and the Opinion and Order dated October 23, 2014.

## STATEMENT OF THE ISSUES

1.    Did the district court properly find the case exceptional pursuant to 35 U.S.C. § 285 in view of the vexatious nature of the lawsuit and the totality of circumstances, including the "frivolous" and "objectively unreasonable" nature of the suit, Lumen's motivation to extract a nuisance settlement from FTB, and the need to deter similar predatory conduct in the future?

2.    Did the district court properly award FTB $148,592.00 in attorneys' fees enhanced by a multiplier of two, for a total award of $297,184.00 in attorneys' fees, based upon the policy justifications under 35 U.S.C. § 285 and the need to deter similar predatory conduct in the future?

## STATEMENT OF THE CASE

On May 29, 2013, plaintiff Lumen View Technology LLC ("Lumen") filed a complaint asserting patent infringement in the United States District Court for the Southern District of New York, against Findthebest.com Inc. ("FTB").  (A115). The complaint alleged infringement of U.S. Patent No. 8,069,073, entitled "System and Method for Facilitating Bilateral and Multilateral Decision-Making" ("the '073 patent") and identified FTB's "recommendation services via the www.findthebest.com website" and the "AssistMe Results" as allegedly infringing the '073 patent.  (A117-18).

The '073 patent, which has since been invalidated, claimed an abstract method of two or more parties evaluating whether they are a good fit for each other—a method that has been widely used for centuries, even prior to the advent of computers.  (A92).  In contrast, FTB's website—a research hub that provides consumers with the ability to compare a wide range of products and services— allows only one party to insert preferences.  (A1351-52).  The website then uses the user's inserted preferences to query stored data and display search results matching those preferences.  (A1353-59).  For this reason, and from the start of the case, FTB and its counsel tried, unsuccessfully, to convince Lumen to drop its claims.  (A1240-43, A1245-46).

In September 2013, FTB moved for judgment on the pleadings that the '073 patent was invalid under 35 U.S.C. § 101 because it did not claim patent-eligible subject matter.  (A147).  While FTB's motion was pending, on October 11, 2013, Lumen submitted its claim construction statement, which, as explained more below, construed claim 1 of the '073 patent to require matching of preference data inputted by at least two parties.  (A221-42).

Shortly thereafter, on November 22, 2013, the district court invalidated the '073 patent on FTB's motion for judgment on the pleadings, finding that the '073 patent claims the abstract idea of computer-assisted matchmaking and was invalid under 35 U.S.C. § 101.  (A1, A37).

FTB, which had by that point incurred substantial attorneys' fees and costs in fending off Lumen's infringement assertions, moved the district court on December 10, 2013 to declare the case exceptional and award it fees and costs pursuant to 35 U.S.C. § 285.  (A1219, A1222).  The motion was fully briefed on January 17, 2014.  (A1363, A1365).  On April 29, 2014, the United States Supreme Court issued its decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), which relaxed the standard for establishing an exceptional case under Section 285 and allowed district courts to exercise case-by-case discretion by considering the totality of the circumstances in each case. After the parties provided supplemental submissions regarding the significance of

4

*Octane Fitness* to FTB's motion (A1390, A1393), on May 30, 2014, the district court granted FTB's motion, declared the case exceptional under Section 285, and awarded attorneys' fees and costs to FTB. (A39).

In subsequent briefing on the amount of fees and expenses to be awarded, FTB requested $149,979.50 in fees and $4,899.63 in costs, in addition to interest, and further requested enhancement of the attorneys' fees award. (A1398, A1537, A1545, A1548). On October 23, 2014, the district court awarded FTB $148,592.00 in attorneys' fees, enhanced by a multiplier of two for a total of $297,184.00 in attorneys' fees, in addition to $4,899.63 in costs. (A56). The district court based its enhancement on the extremely low "lodestar" amount and several of the *Octane Fitness* factors the district court had considered in finding the case exceptional. (A66-69). On November 6, 2014, Lumen requested reconsideration of the district court's fee and cost award, which was denied on November 12, 2014. (A734, A792). Lumen timely appealed on January 15, 2015.

## STATEMENT OF FACTS

**A.    FTB and Its Consumer Research Website**

FTB is a Santa Barbara, California-based company that was founded in 2009 by Kevin O'Connor, a successful, serial entrepreneur.  (A1351-52).  At the outset, FTB was created to help consumers discover and learn about the "best" products and services available to fit their requirements.  FTB operates a website at the URL www.findthebest.com that provides consumers with unbiased, data-driven comparisons of a wide array of consumer products and services, such as smartphones, cars, and ski resorts.  (A1351).  Only one party using FTB's website—the user visiting the website—inserts preferences.  (A1351).  FTB's website then employs the user-entered preferences to query its database and display products or services matching the user's preferences.  (A1351).

**B.    Lumen's "Shell" Game Designed to "Monetize" the '073 Patent**

Lumen is the most recent "shell entity" created to recover any "licensing fees" or other monetary gains from litigation on the '073 patent.  Lumen was formed on February 23, 2012 for the sole "business purpose, as exclusive licensee of [the '073 patent] to monetize the rights under '073 patent (sic) as it 'possesses all rights of recovery under the '073 patent, including the right to sue and recover all damages for infringement thereof, including past infringement.'"  (A1319).

Shortly after Lumen was formed, on March 1, 2012, Lumen became the exclusive licensee of the '073 patent. (A57).

Lumen, as a "shell entity," is undercapitalized, does not operate any legitimate business, and does not have any actual offices. (A1321, A1327). As such, Lumen avoids numerous burdens of litigation—*e.g.* the disruption to business and the expense of compiling discovery responses—which it inflicts on its victims. Indeed, by way of example, Lumen used its "shell entity" status as an objection to providing fulsome discovery responses regarding basic patent litigation information such as the claimed priority date of the '073 patent because it "is not an inventor, applicant or otherwise as being formed after issuance of the ['073 patent], e.g. the '073 patent issued on Nov. 29, 2011 and Lumen View Technology LLC…was incorporated/formed on 02/23/2012." (A1325-27).

### C.    The '073 Patent

In its Disclosure of Asserted Claims and Infringement Contentions ("Infringement Contentions") made pursuant Local Patent Rule 6 of the Southern District of New York, Lumen asserted only claim 1 of the '073 patent—the only independent claim—against FTB. (A152). Claim 1 of the '073 patent purportedly covered a computer-implemented, multi-step process for decision making in a transaction, whereby two or more people provide responses to questions designed to reveal the value a party places on certain attributes, creating a "preference

profile" for each respondent, which is then analyzed and matched against other parties' preference profiles to output a list that ranks how closely the party's preference profile matches those of other parties.  (A92, A152).

Claim 1 covered only circumstances where **two or more preference profiles are created and analyzed** ("bilateral and multilateral decision-making"); *e.g.*, it does not cover circumstances where **one** individual provides responses and only one preference profile is created ("unilateral decision-making") even if that preference profile is compared to attributes of another party.  (A92).  This is a crucial distinction that the '073 patent uses to distinguish its method from prior art: "Since the embodiment uses a preference profile *for both parties and counterparties* to evaluate the closeness of fit of preferences, it is a bilateral preference analysis method as opposed to the unilateral methods of the prior art." (A92 at 4:48-52 (emphasis added) (explaining the method depicted in Fig. 2)).[1] Claim 1 of the '073 patent does not apply to the following four situations: (1) where a preference profile for only one party is created from forced choice questions; (2) where preference profiles are not created in response to forced choice questions; (3) where a conjoint analysis/statistical analysis is not applied to

---

[1] *See* A92 at 4:11-5 (explaining the method depicted in Fig. 1 of generating two preference profiles based on each party's response to forced choice questions); 13:32-25 (explaining the method depicted in Fig. 3, whereby a preference profile is "generated for each party"); 15:56-63 (explaining the method creates preference profiles for *each* party "using the party's answers to preference form questions").

two or more preference profiles; and (4) where the parties do not rank or set a value to their responses to forced choice questions. (*See* A92).

### D.    Lumen Maintained Its Baseless Claims Without Explanation

Throughout the litigation, Lumen resisted providing information to support its spurious claims of infringement. After FTB filed an answer to the complaint, on August 30, 2013, Lumen served FTB with its Infringement Contentions asserting claim 1 of the '073 patent. (A152-A172). Lumen's Infringement Contentions were vague, identified FTB's entire "website" as the "Accused Product or Service," and provided little supporting detail about how Lumen believed the function of FTB's website infringed the '073 patent. The appendices and figures Lumen attached to the claim chart contained screenshots from two sections of FTB's website: the written "About Us" and "Content Policy" pages, neither of which showed any features or functionality of the website in operation. (A157-71). Lumen did not even show an example of the accused AssistMe functionality, which is publicly available without registration or any other barriers to access. On September 19, 2013, FTB notified the district court that FTB believed that the Infringement Contentions were inadequately detailed and should be stricken or supplemented. (A828). Following Lumen's response (A695) and a telephone conference, on September 24, 2013, the district court denied FTB's application. (A173).

9

FTB then attempted to obtain information through written discovery about Lumen's pre-filing infringement investigation, but Lumen objected repeatedly in its interrogatory responses and failed to provide any detail about the basis for its infringement claims. (A1392-44). After the '073 patent was invalidated, Lumen had the opportunity to explain to the district court the adequacy and scope of its pre-filing infringement investigation during the course of briefing on FTB's motion for exceptional case determination. Rather than seizing that opportunity to vindicate itself, Lumen made only conclusory statements that it "extensively investigated its claim" by performing "weeks of infringement analysis with respect to the FTB website" and identified "on an element-by-element basis, presence of each claim limitation of claim 1 of the '073 patent in the FTB website." Lumen provided no documentation to support its claims. (A825-26).

### E.     Lumen's Complaint and Immediate Settlement Offer

Shortly after Lumen filed its complaint against FTB on May 29, 2013, FTB received a letter from Lumen's counsel enclosing a copy of the complaint. (A1251-56). Lumen's letter stated that FTB's "AssistMe feature meets one or more claims of the '073 patent" and that the complaint had already been filed in the Southern District of New York. (A1251). The letter further advised that a response to the complaint must be filed within 21 days but, "[i]f Company is interested in avoiding the need for filing a responsive pleading, you must contact

us (prior to the date of Company's Response) to discuss license terms." (A1252). The letter threatened that if FTB did not immediately pay Lumen a "licensing fee," Lumen would use the litigation process to disrupt FTB's business and increase expenses for FTB. (A1252). Specifically, the letter threatened "full-scale litigation" and "all motion practice as well as protracted discovery" if FTB chose to defend the litigation rather than pay a licensing fee. (A1252). The letter warned that, if FTB "engage[d] in early motion practice," Lumen would "likely increase Plaintiff's settlement demand." (A1252). It also "advised" that "for each nondispositive motion filed by Company, Plaintiff will incorporate an escalator into its settlement demand to cover the costs of its opposition papers and argument." (A1262). The letter made it clear that, if FTB fought Lumen's baseless patent infringement lawsuit, Lumen would ensure that FTB's key employees would be wrapped up in the litigation causing serious disruption to FTB's business. (A1252-56). In subsequent conversations with Lumen's attorney, Lumen stated that it would settle the litigation for an $85,000 "licensing fee." (A1245).

When FTB rejected Lumen's offer and informed Lumen that it would fight the frivolous lawsuit, Lumen made a last-ditch effort to persuade FTB to "settle" by dropping its licensing fee to $55,000 the day before FTB's answer was due.

(A1246).  Lumen stated that this "offer" was a "one-day only offer" that would expire when FTB filed its responsive pleading the next day.  (A1246).

In addition to FTB, in a span of about 15 months, Lumen sued 20 other companies on the '073 patent, in industries as varied as job searching, educational recruitment, volunteer matching, carpooling, and dining recommendations. (A1247-48).  With each suit, Lumen also sent form letters notifying each company of the litigation and requiring payment of a fee to avoid a lawsuit.  (A1248).  The suit against FTB was the last remaining:  Lumen dismissed all the others early in the litigation, presumably after extracting the nuisance "licensing fee" or reaching other some agreement with the defendant to avoid the expense and distraction of defending a patent litigation lawsuit.  (A1248).

### F.     FTB Requested That Lumen Withdraw its Baseless Complaint

After the complaint was filed, Mr. O'Connor and Danny Seigle, FTB's Director of Operations, contacted Lumen's counsel to discuss the recently filed lawsuit and attempt to understand why Lumen believed FTB was infringing the '073 patent.  (A1240-43).  When asked what research or due diligence was done that prompted the claims against FTB, Lumen stated that FTB "should trust that [Lumen] has done proper due diligence," but could not give any specifics when pressed for details.  (A1242-43).  Lumen's counsel lacked any knowledge of the manner in which FTB's website operated, which was public knowledge, and could

give no factual explanation for why Lumen believed FTB infringed the '073 patent. (A1241, A1243). Lumen's counsel could not even explain the basic process purportedly covered by the '073 patent. (A1241, A1243, A1246).

During their conversation, Mr. Seigle explained that FTB did not in any way use the bilateral or multilateral process disclosed by the '073 patent. (A1241, A1243). However, Lumen's counsel refused to discuss the merits of its infringement claim and simply reiterated Lumen's position that FTB would have to pay "licensing fees" to avoid costly litigation. (A1241, A1243).

FTB's counsel also contacted Lumen's counsel to explore the basis for Lumen's infringement claims and explained to Lumen's attorney on several occasions that FTB's website performed only unilateral decision-making, which was not covered by the '073 patent. (A1246, A1289-90). FTB's counsel specifically requested that Lumen's counsel identify the "second class" of parties allegedly present in FTB's system. (A1290). Lumen's counsel refused. (A1289).

### G. Lumen Attempted to Extort a "Licensing Fee" By Threatening Criminal Prosecution

After it became clear that Lumen's counsel was not interested in discussing the merits of Lumen's infringement case, Mr. O'Connor subsequently telephoned one of the inventors of the '073 patent, Eileen Shapiro, and left a message explaining who he was, stating that he was calling to better understand the allegations of FTB's infringement of the '073 patent, and explaining that he

13

believed the lawsuit against FTB was meritless. (A1243). Subsequent to his initial message, Mr. O'Connor left another message for Ms. Shapiro. (A1243). Ms. Shapiro returned his call and Mr. O'Connor spoke with her about the lack of merit of Lumen's suit. (A1243).

Shortly thereafter, Lumen's counsel contacted FTB's counsel and stated that Mr. O'Conner had called Ms. Shapiro a "patent troll." (A1246-47). According to Lumen's counsel, calling someone a "patent troll" constituted a "hate crime" under "Ninth Circuit precedent." (A1246). Lumen's counsel then represented that Lumen and Ms. Shapiro would report FTB to the district court and pursue criminal charges unless: (1) Mr. O'Connor apologized to Ms. Shapiro; (2) FTB financially compensated Ms. Shapiro; (3) FTB financially compensated Lumen's attorney; and (4) FTB settled the civil patent infringement lawsuit by paying the $85,000 licensing fee that Lumen had previously demanded. (A1246-47). Lumen's counsel further stated that the offer of the licensing fee was good until close of business that day and that FTB should "act quickly." (A1247).

## H.    Lumen Attempted to Silence FTB

To further intimidate FTB, distract FTB from defending the patent infringement action, increase litigation expenses, and prevent FTB from taking steps to repair damage to its reputation, on October 22, 2013, Lumen filed a meritless motion seeking to prevent FTB from exercising its First Amendment

right to speak with the media. (A571, A930, A933). Lumen complained to the district court that persons associated with FTB were disclosing information about the litigation that portrayed Lumen negatively and moved the district court for a gag order prohibiting FTB from discussing settlement negotiations publicly. (A571). The motion was filed concurrently with a false declaration by Lumen's counsel contending that counsel for FTB and counsel for Lumen had entered into an oral agreement not to disclose settlement discussion information. (A933, A1032, A1048). The motion and false declaration were filed with the intent of compelling FTB to keep quiet about Lumen's business practices and to concede to Lumen's efforts to extract a "licensing fee." (A1032, A1048). The district court denied Lumen's motion, holding that Lumen "[did] not come close to carrying the burden of justifying imposition of a gag order" and noting that the Lumen's representation that there was an oral agreement appeared to be contradicted by the parties' subsequent correspondence. (A1213).

## I.    Invalidation of the '073 Patent

On September 24, 2013, FTB filed a motion for judgment on the pleadings that the '073 patent was invalid. On November 22, 2013, the district court ruled on FTB's motion for judgment on the pleadings and invalidated the '073 patent because it claimed an "abstract idea," which does not constitute patent eligible subject matter under 35 U.S.C. § 101 (A1), based on *Bilski v. Kappos*, 130 S. Ct.

3218 (2010) and *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269 (Fed. Cir. 2013).

**J.     The District Court's Determination that This Case Is Exceptional and Award of Reasonable Attorneys' Fees**

By the point in the case at which the '073 patent was invalidated, FTB had incurred substantial attorneys' fees and costs in litigating Lumen's meritless claims.  On December 10, 2013, FTB requested that the district court declare the case exceptional and award fees and costs pursuant to Section 285.  (A1219-1360). The motion was fully briefed on January 17, 2014.  (A795, A920).

After the *Octane Fitness* decision, the district court requested supplemental submissions from the parties addressing the significance of *Octane Fitness* on the issues raised by FTB's motion.  (A1388).  On May 30, 2014, the district court granted FTB's motion, declared the case exceptional under Section 285, and awarded attorneys' fees and costs to FTB.  (A39).  The district court then requested submissions on the amount of attorneys' fees and costs to be awarded.

FTB's subsequent submissions requested a total of $149,979.50 in fees and $4,899.63 in costs, in addition to interest, and further requested enhancement of the attorneys' fees award.  (A1398-1459, A1479, A1482).  On October 23, 2014, the district court awarded FTB $148,592.00 in attorneys' fees, enhanced by a multiplier of two for a total of $297,184.00 in attorneys' fees, in addition to $4,899.63 in costs.  (A56).  The district court based its enhancement on the

16

extremely low "lodestar" amount and the *Octane Fitness* factors the district court had previously considered in finding the case exceptional, including Lumen's desire to extract a nuisance settlement, Lumen's threats to escalate the expense of litigation if FTB did not pay an unjustified license fee, the frivolous nature of Lumen's claims, and the need to deter Lumen's predatory strategy. (A66-69).

On November 6, 2014, Lumen requested reconsideration of the district court's fee and cost award, which was denied on November 12, 2014. (A734, A792). In its motion for reconsideration, Lumen advanced new arguments supporting Lumen's supposed pre-filing diligence and reasonable belief that FTB infringed the '073 patent. (A736). In denying Lumen's request, the district court noted that Lumen's new legal arguments related to the exceptional case determination, not the amount of reasonable attorneys' fees to be awarded FTB, and were months untimely under the district court's local rules. (A793).

# SUMMARY OF THE ARGUMENT

As the district court correctly determined, "this is a prototypical exceptional case." Despite knowing that FTB did not infringe the '073 patent, Lumen filed and continued to pursue baseless claims against FTB in order to extract a settlement payment. Lumen knew, or should have known, that FTB was not infringing the '073 patent and either did not do or just ignored the results of its due diligence and investigation into FTB's operations. Lumen failed to timely present its pre-filing investigation and infringement arguments to the district court and belatedly attempts to remedy its deficiencies now, on appeal. Contrary to Lumen's newly-advanced explanations, the record conclusively establishes that FTB's accused services do not employ matching to two party preferences and did not infringe any claim of the '073 patent.

Lumen's pattern and practice was to bring serial lawsuits for infringement of the '073 patent in order to collect payments from defendants who recognized the high cost of patent litigation and chose, instead, to pay Lumen a fraction of the defense cost as a "nuisance" settlement. Lumen tried to exploit the legal process, the huge expenses associated with defending a patent infringement lawsuit, threats of criminal prosecution, and disruption to FTB's business in order to extract payment from FTB in exchange for dismissal of the frivolous litigation.

Not only does Lumen's litigation conduct and maintenance of baseless claims of infringement justify the district court's exceptional case determination, it also warrants the district court's imposition of an award of reasonable attorneys' fees, which in this case includes an enhancement to deter future, similar predatory conduct and accomplish the purposes of Section 285.

## **STANDARD OF REVIEW**

All aspects of a district court's determination under Section 285 are reviewed for an abuse of discretion, including the district court's conclusion that a case is exceptional and an award of reasonable attorneys' fees. *Highmark, Inc. v. Allcare Health Mgm't Sys., Inc*., 134 S. Ct. 1744 (2014). Under *Highmark*, abuse of discretion occurs only if the district court "based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id*. at n.2.

# **ARGUMENT**

## I.    The District Court Did Not Abuse Its Discretion In Determining That This Case is Exceptional

An "exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756.  District courts "may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances" (*id.*) which, as the Supreme Court noted, may include factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.*, n.1.  In *Octane Fitness*, the Supreme Court emphasized that sanctionable conduct is not the appropriate benchmark:  under the *Octane Fitness* standard, "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id.* at 1756-57.

The Supreme Court also held that Section 285 "demands a simple discretionary inquiry" which "imposes no specific evidentiary burden." *Id.* at 1758.  Thus, the traditional "preponderance of the evidence standard" applies. *Id.*

21

The district court determined, after review of the totality of the circumstances, that this is the "prototypical exceptional case." (A39). Lumen argues that the district court abused its discretion by (1) declining to conduct claim construction or a jury trial prior to the exceptional case determination; (2) failing to consider details about Lumen's pre-filing investigation and infringement arguments that Lumen never presented to the district court; and (3) considering Lumen's pattern and practice of filing multiple lawsuits only to dismiss them upon payment of a small license fee as a factor. However, in declaring this case exceptional under Section 285, the district court properly applied the *Octane Fitness* standard by considering the "totality of the circumstances," including evaluating the "substantive strength" of Lumen's claims together with all other evidence bearing on the "unreasonable manner" in which Lumen litigated this case. Under *Octane Fitness* and *Highmark*, the district court properly discharged its discretionary inquiry. As a result, the decision of the district court must be affirmed.

### A. The District Court Evaluated Infringement Using Lumen's Own Proposed Claim Constructions and No *Markman* Hearing or Jury Trial Was Necessary to Determine that FTB Did Not Infringe

Lumen complains that *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996), required the district court to conduct a hearing and make claim construction determinations prior to assessing the strength of Lumen's

infringement arguments.  (Lumen Bf. at 36-40).  In doing so, Lumen ignores the fact that the district court gave Lumen every benefit of the doubt by evaluating Lumen's infringement arguments using ***Lumen's own claim constructions***.  (A51 ("Lumen's own claim construction brief construed the independent claim of the '073 patent as requiring two or more parties to input preference data"); A54 (noting that "Lumen's own claim construction brief construes the '073 patent's independent claim as requiring the input of multiple parties' preference data" and "[e]ven under Lumen's proffered claim construction, no reasonable litigant could have expected success on the merits")).  Even if the district court had conducted *Markman* proceedings as a formality, the result could have been no better for Lumen.

Lumen's reliance on *Biax Corp. v. Nvidia Corp*., 2015 WL 755940 (Fed. Cir. Feb. 24, 2015) is misplaced.  In *Biax*, the Court determined that there was an ambiguity in claim construction that was not remedied until summary judgment, thus, the patent holder was justified in maintaining its infringement claims and the district court erred in declaring the case exceptional.  *Id*. at *4.  Here, there was no surprise in claim interpretation.  Lumen presumably knew its own claim construction positions prior to filing suit against FTB, or prior to filing multiple other suits for infringement of the '073 patent, or prior to disclosing its Infringement Contentions.  Lumen chose to maintain infringement claims against

FTB under these claim construction positions, despite the fact that FTB's system does not perform bilateral or multilateral decision-making. Thus, Lumen's citation of cases requiring claim construction determinations prior to resolving infringement claims is misplaced and unavailing: whether or not a *Markman* hearing was conducted is immaterial to this case because the district court evaluated FTB's infringement using Lumen's proposed claim definitions.

Lumen would have the Court enact a requirement that jury trials are required before a district court is allowed to make any determination that assesses the strength of infringement claims. (Lumen Bf. at 40-41). If that were so, then no district court could make factual findings relevant to infringement claims, or enter summary judgment on infringement claims. Lumen's argument is patently overreaching and misplaced. No jury trial was required to establish FTB's non-infringement of the '073 patent. The district court assessed Lumen's own proposed claim constructions and the evidence that Lumen provided in its Infringement Contentions and briefing. The district court did not abuse its discretion in determining that Lumen's infringement claims were baseless and that this case is exceptional.

**B.    Lumen Cannot Bolster the Substantive Strength of Its Pre-Filing Investigation and Infringement Claims By Advancing New Arguments**

Lumen claims that it was not given the opportunity to present to the district court the facts of its pre-filing investigation and the support for its infringement arguments.  (Lumen Bf. at 39-40).  To remedy this alleged error, Lumen provides pages of conclusory and speculative statements about the "plausible" infringement arguments Lumen derived from "publicly-available information that Lumen reviewed as part of its investigation."  (Lumen Bf. at 10-17).  But, as the district court noted in its order denying Lumen's motion for reconsideration of the attorneys' fee award, these are new, untimely arguments that Lumen could have submitted during the months-earlier briefing on FTB's motion for exceptional case.  (A793).  Lumen had ample opportunity to submit explanation of the details of its pre-filing investigation and infringement arguments to the district court—but it did not.  (A795, A824, A1460).  Lumen has the gall to fault the district court for Lumen's failure to present these arguments, even though it was Lumen's choice not to do so at the appropriate time.  There was no question at any stage in the litigation that FTB's system did not infringe, and Lumen waived this argument in any event.[2]  (A793).

_____

[2] Lumen does not appeal from the district court's November 12, 2014 Order denying Lumen's Motion for Reconsideration of Award of Enhanced Attorneys' Fees.

Lumen belatedly attempted to repair the deficiencies in its pre-filing investigation and infringement allegations by first arguing in its motion for reconsideration, and here on appeal, that

- As part of its pre-filing investigation, Lumen's counsel generated "an infringement claims chart demonstrating, on an element-by-element basis, the infringement of the FTB AssistMe Service" (Lumen Bf. at 11);

- Lumen based its infringement allegations on "a publicly available video located on the Wall Street Journal website since 2011" in which Mr. O'Connor described FTB's service (Lumen Bf. at 12);

- FTB's "cleansing, categorizing and 'curating' certain data in the FTB system" constitutes input of preference data by multiple parties (Lumen Bf. at 12-13);

- FTB's system is a "comparison engine" that "requires a human-inputted rating element" (Lumen Bf. at 14);

- "certain features of FTB's system rely on preference data being inputted by multiple parties" (Lumen Bf. at 16);

- "Selected sellers of products and services" who edit their listings are a "first class of parties," "FTB's employees and researchers" are a "second class of parties" or "co-evaluators," and "FTB's purchaser users" constitute a "third class of parties" all performing separate roles (Lumen Bf. at 16-17).

However, Lumen failed to include any of these arguments and alleged grounds for infringement in its Infringement Contentions or disclose them during written discovery. Then, when it had the opportunity to explain to the district court what it did to investigate FTB's system before filing the complaint and why it

maintained its infringement assertions in the fact of FTB's opposition, Lumen chose not to argue these points. (A795, A824, A1526). During briefing on FTB's motion for exceptional case, FTB pointed out repeatedly that Lumen had failed to provide support for its pre-filing investigation or its infringement allegations, but Lumen still remained silent. (A1365) (Lumen failed to submit even basic information about its "extensive, weeks-long analysis": no "names of individuals conducting the investigation," "affidavits of the alleged investigators," no "billing records," no dates of investigations, and "no offer to submit work product to the Court *in camera*"). Lumen's silence at the district court speaks volumes. Lumen broke its silence only after the district court awarded FTB its reasonable attorneys' fees, which is too late. (A792). It is completely inappropriate for Lumen to raise these new grounds to support its pre-filing investigation and infringement arguments here, on appeal. As the district court held, Lumen had its day in court and should have advanced these arguments months earlier.[3] (A793).

Regardless of Lumen's late-advanced arguments, FTB's system did not infringe the '073 patent. Lumen inflates the importance of the early stage of the proceedings when the '073 patent was invalidated and FTB's motion for

---

[3] The district court held that Lumen's arguments should have been raised months earlier and were thus untimely under Local Rule 6.3. (A793). It is well-established that a district court has the inherent authority to enforce its own local procedural rules. 28 U.S.C. §§ 1654, 2071; Fed. R. Civ. P. 83. A district court's decision to grant or deny a motion for reargument lies within the sound discretion of the district court. *See McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983).

exceptional case determination was briefed.  However, by that point, Lumen had disclosed its Infringement Contentions, FTB had disclosed its Invalidity Contentions, the parties had exchanged responses to written discovery, and claim construction positions were fully briefed.  The record is more than adequate for the district court to find that Lumen "proceeded with an obviously baseless lawsuit, failing to point to any specific way in which FTB infringed the patent."  (A54).

### C.     The Presumption of Patent Validity Does Not Excuse Lumen's Conduct

Patents are presumed to be valid by statute.  35 U.S.C. § 282.  Lumen argues that, because the '073 patent was issued after *Bilski* and before *Alice*, it had a "right to rely" on the validity of the '073 patent and, thus, its litigation position was reasonable and strong.  (Lumen Bf. at 28).  However, the validity of the '073 patent played "no role" in the district court's determination of exceptionality:  as the district court noted "the question addressed here is whether Lumen could properly assert infringement based on the '073 patent."  (A54).  While duly issued patents may be presumed valid, there is no corresponding presumption of infringement.  Lumen's argument that the presumption of validity excused its maintenance of its infringement claims is unavailing.

**D.  The District Court Properly Considered the Totality of the Circumstances in Determining That This Is An Exceptional Case**

Lumen complains that the district court's consideration of the totality of the circumstances of this case was unfair and that other cases that are deemed exceptional are those involving "egregious" behavior.  (Lumen Bf. at 29 n.1). Lumen focuses on the district court's unfavorable view of Lumen's demands for a low-value, litigation-escalated settlement payment, failure to support its pre-filing investigation, maintenance of baseless infringement claims, and predatory purpose. (A54).   But Lumen overlooks the other, extensive evidence in the record[4] supporting the district court's determination that this case is exceptional, including:

- Lumen filed suit and immediately threatened to use the litigation process to disrupt FTB's business and increase expenses for FTB if FTB chose to defend the litigation rather than pay the demanded "licensing fee." (A1250).

- Lumen's demand letters to litigation targets threatening "protracted discovery" and collection of information from an extensive list of sources, including "personal" devices such as smartphones, if targets did not accede to Lumen's payment demands.  (A1252-55).

- Lumen's failure to point to any pre-filing investigation performed, as underscored by its attorney's inability to describe even basic operations of FTB's website and refusal to discuss the merits of its claims with FTB's executives. (A1240-43).

---

[4]  The district court found the case exceptional even absent consideration of Lumen's other "offensive litigation tactics," such as threatening criminal prosecution of FTB, attempting to obtain a gag order, and use of shell entities, and thus did not find it necessary to address their merits.  (A53, n.3).

- Lumen's refusal to provide specific information regarding Lumen's pre-filing diligence and a factual explanation for why Lumen believed that FTB infringed the '073 patent. Instead, Lumen's attorney simply reiterated Lumen's position that FTB would have to pay "licensing fees" to avoid costly litigation. (A1288).

- Lumen's willful maintenance of its baseless infringement claims despite disclosure by FTB that it did not in any way use the bilateral or multilateral process claimed in the '073 patent and multiple requests for the basis for Lumen's infringement claims. (A1240-43, A1288).

- Lumen's threats to report FTB and pursue criminal charges unless, among other financial demands, FTB paid the $85,000 licensing fee Lumen had previously demanded. (A1245).

- Lumen's admission that its sole "business purpose" is "to monetize the rights under '073 patent (sic)" and leverage of its "shell entity" status to obstruct discovery on key issues such as the claimed priority date of the '073 patent. (A1313, A1325-27).

- Lumen's filing of a meritless motion seeking to prevent FTB from exercising its First Amendment right to speak with the media, accompanied by a false declaration from Lumen's attorney. (A571, A933, A1048).

Considering the totality of these circumstances, this case is exceptional and the determination by the district court is well-supported by the record. Lumen's conduct was egregious and the district court did not abuse its discretion in determining that, based on the totality of the circumstances, this is "a prototypical exceptional case."

## II.    The District Court Did Not Abuse its Discretion in Enhancing the Attorneys' Fee Award

After determining that this case was a "prototypical exceptional case," the district court awarded $297,184.00 in reasonable attorneys' fees to FTB, including an enhancement of the "lodestar" amount by a multiplier of two based on the same underlying facts and consideration of the *Octane Fitness* factors that supported the exceptional case determination. (A56). Lumen argues that it "has done nothing but act in the way a reasonable patent holder is expected to act" and that, as a result, the district court abused its discretion in enhancing the fee award.[5] (Lumen Bf. at 24). Lumen bases its argument on the too-late, unsupported assertions that Lumen conducted a thorough pre-filing investigation and had sufficient grounds to maintain its infringement allegations, and its protestations of innocent intent in demanding an escalating settlement payment and trying to silence FTB. (Lumen Bf. at 24-25). But review of the record of Lumen's conduct supports the district court's determination that this case is exceptional and warrants an award of "reasonable" attorneys' fees including the enhancement.

### A.    Section 285 Permits An Award of Reasonable Attorneys' Fees, Which Properly Includes an Enhancement in This Case

Section 285 permits district courts to "award reasonable attorney fees to the prevailing party." The starting point in determining the attorneys' fees award is

---

[5] Lumen does not challenge the district court's base award of $148,592.00 and $4,899.63 in costs.

calculation of the "lodestar" number, which may then be adjusted "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010).  As the district court noted, "[i]n determining what is a 'reasonable' award, 'although the amount the client paid the attorney is one factor for the court to consider in determining a reasonable fee, it does not establish an absolute ceiling.'"  (A64, citing *Junker v. Eddings*, 396 F.3d 1359, 1365 (Fed. Cir. 2005)).  Simply put, the district court has the discretion to determine what amount constitutes an award of "reasonable" attorneys' fees, which may include an enhancement of the "lodestar" amount if the total award is still "reasonable." *See*, *e.g.*, *Takeda Chem. Indus.*, *Inc. v. Mylan Labs., Inc.*, 549 F.3d 1381 (Fed. Cir. 2008).  Indeed, the Court has previously stated that "courts should not be, and have not been, limited to ordinary reimbursement of only those amounts paid by the injured party for purely legal services of lawyers, or precluded from ordinary reimbursement of legitimate expenses defendant was unfairly forced to pay." *Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988), *citing Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983).  The district court determined that enhancement of the low lodestar amount in this case was still a "reasonable" fee award.

Lumen argues that allowing district courts the discretion to enhance awards of attorneys' fees under Section 285 automatically means that every finding of exceptionality will result in enhancement because it will necessarily implicate the damages enhancement provisions of 35 U.S.C. § 284.   (Lumen Bf. at 47-48). Lumen's concerns about jurisprudence regarding the enhancement provision of Section 284 bleeding over into jurisprudence regarding Section 285 are misplaced. As Lumen notes, the Court recently discussed the standards under Sections 284 and 285.  *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 780 F.3d 1357, 1361 (Fed. Cir. 2015) (O'Malley dissent from denial of petition for rehearing en banc). While the standard for evaluating willful infringement under Section 284 articulated in *In re Seagate*, 497 F.3d 1360 (Fed. Cir. 2007), and further explained in *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc*., 682 F.3d 1003, 1007 (Fed. Cir. 2012), may have been analogous to the test the Court proscribed for the award of attorneys' fees under Section 285 in *Brooks Furniture Mfg, Inc. v. Dutailier Int'l, Inc*., 393 F.3d 1378, 1381-82 (Fed. Cir. 2005), the two standards are no longer so closely parallel after *Octane Fitness*.  Indeed, the Supreme Court instructed in *Octane Fitness* that a "flexible totality of the circumstances test" should be employed and that it is inappropriate to artificially constrict the evidence a court may consider when making determinations under Section 285.  *Halo Elecs, Inc.*, 780 F. 3d at 1361.  *In re Seagate* has not been similarly modified.

33

Lumen's appeal requires assessment of the propriety of *this* district court's decision, in *this* case, based on *this* record, which established conclusively that Lumen's conduct was egregious and, "but for FTB's financial resources and resolve, Lumen's predatory behavior would likely have proceeded unchecked." (A67). Affirming the district court's decision does not implicate Section 284. The district court's consideration of Lumen's conduct under the *Octane Fitness* factors relate only to its determination of exceptional case and the amount of "reasonable" attorneys' fees under Section 285. Thus, this appeal does not require a broad determination from the Court regarding the interplay between Sections 284 and 285: the only issue is whether the total amount of the district court's award of reasonable attorneys' fees under Section 285 constitutes an abuse of discretion.

### B.   The District Court's Decision to Enhance the Lodestar Amount By a Multiplier of Two is Supported by the Record

A district court must provide "a reasonably specific explanation" for any enhancement of a fee award. *Perdue*, 559 U.S. at 558. Lumen argues that the district court's selection of two as the multiplier for the low lodestar amount was random and unjustified, and in violation of the *Perdue* requirement. (Lumen Bf. at 50, 52). However, Lumen is in denial. The record and the district court's opinion are replete with support for the district court's enhancement of attorneys' fees by a multiplier of two in this case.

34

The district court based its decision to enhance fees by a factor of two on extensive review of Lumen's conduct throughout the litigation and determined that the low lodestar amount would be insufficient to deter Lumen from continuing to litigate in the same manner. (A64-69). Indeed, the district court noted that an expedited schedule in this case—which Lumen resisted—specifically contributed to a lower-than-expected lodestar amount. Because Lumen intended "to file more lawsuits making claims that others had infringed the '073 patent and presumably hoped to extract additional "reasonably priced" licenses from hapless defendants, Lumen opposed FTB's proposal to permit a "prompt motion on the validity of the '073 patent." (A68). Had the district court adopted Lumen's proposal, which called for an aggressive discovery schedule before resolving the fundamental issue of validity of the '073 patent, the attorneys' fees incurred would have certainly been significantly greater. (A68). Thus, upon considering Lumen's conduct and the low lodestar amount, the district court determined that the enhancement needed to be large enough to deter Lumen's conduct and that applying a multiplier of two accomplished that goal while still constituting a reasonable fee award. (A69).

The district court's award of reasonable fees including the enhancement value of two is further supported by objective evidence. In determining a reasonable fee award, a district court may refer to American Intellectual Property Law Association ("AIPLA") surveys or other, reputable surveys with an

appropriate sample size and controls.  *See Mathis*, 857 F.2d at 755.  To support its fee request, FTB included objective evidence from the AIPLA Report of the Economic Survey for 2013 ("AIPLA Report") that the average cost through discovery for defense of infringement claims brought by non-practicing entities in New York City ranged from $445,000 for lower value cases, to $1,063,000 for higher value cases.  (A1473).  Lumen did not challenge the reasonableness of the rates charged by FTB's attorneys and staff, nor did it argue that the AIPLA Report evidence was inapplicable.  The district court's award of $297,184.00 in attorneys' fees with enhancement still falls below the AIPLA Report average range.

### C.    The Enhanced Award Serves a Compensatory and Deterrent Effect, Not a Punitive Purpose

As the district court noted, "Lumen proceeded with an obviously baseless lawsuit" motivated by intent "to extract a nuisance settlement from FTB."  (A52).  Lumen's "instigation of baseless litigation is…part of a predatory strategy aimed at reaping financial advantage from the inability or unwillingness of defendants to engage in litigation against even frivolous patent lawsuits."  (A53).  Lumen argues that the district court's enhancement was designed to punish Lumen for its conduct.  (Lumen Bf. at 51-53).  However, contrary to Lumen's arguments, the district court specifically noted that the enhancement was not punitive.  (A50).  Indeed, an award of the low lodestar amount would have been wholly insufficient to "fully compensate a defendant subjected to bad faith litigation, e.g., for loss of

executives' time and missed business opportunities" as a result of Lumen's predatory tactics. *Mathis*, 857 F.2d at 754. The enhanced award is not a "windfall" to FTB, which incurred far greater expense as a result of this case than the total on its attorneys' invoices indicate.

Lumen worries that the enhanced fee award under Section 285 will broadly deter patent holders from enforcing their rights and cries that it, rather than FTB, is the true victim in this case. (Lumen Bf. at 52). This is patently not so. The district court made extensive findings supported by the record about Lumen's predatory conduct in general and its maintenance of baseless litigation brought in bad faith in this case. If anything, an enhancement of the attorneys' fee award will have a desirable "chilling effect" on patent holders considering bringing baseless, frivolous, bad faith litigation designed to harass and extract settlement payments from defendants, like Lumen did.

## CONCLUSION

The district court's findings under Section 285 are well-supported by the record.  At a minimum, Lumen's decision to maintain baseless infringement claims and conduct predatory litigation against FTB conduct justify the district court's exceptional case determination.  Lumen's late-advanced attempts to validate its pre-filing investigation and infringement allegations are too little, too late.  Enhancing the attorneys' fee award by a multiplier of two is reasonable and accomplishes the simultaneous goals of deterring similar, future conduct by Lumen and the purpose of Section 285 in providing a modicum of reimbursement to FTB for the fees and costs it incurred in defending itself.  Because the district court did not abuse its discretion in declaring this case exceptional and awarding FTB $297,184.00 in attorneys' fees, the decisions should be affirmed.

Respectfully submitted,

/s/ Joseph S. Leventhal
Joseph S. Leventhal
Carolyn V. Juarez
The Leventhal Law Firm, Apc
600 West Broadway, Suite 700
San Diego, California  92101
(619) 356-3518
jleventhal@leventhallaw.com
cjuarez@leventhallaw.com

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 29th day of May, 2015, I caused this Brief of Appellee to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Damian Wasserbauer
WASSERBAUER LAW LLC
Post Office Box 382
Collinsville, Connecticut  06022
(860) 266-1779

*Counsel for Appellant*

Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of copies of the Brief of Appellee will be hand filed at the Office of the Clerk, United States Court of Appeals for the Federal Circuit in accordance with the Federal Circuit Rules.

/s/ Joseph S. Leventhal
*Counsel for Appellee*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*7,889*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: <u>May 29, 2015</u>                    <u>/s/ Joseph S. Leventhal</u>
                                            *Counsel for Appellee*